IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JOHN LEWIS WILLIAMS, JR.,
      Petitioner,

vs.                                    Case No.:  3:12cv224/LAC/EMT

MICHAEL D. CREWS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (doc. 45).  Respondent filed an answer and relevant portions of the state court record (*see* docs. 30, 31, 54).  Petitioner filed a reply (doc. 56).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 30, 31).[1]  Petitioner was charged in the Circuit Court in and for Walton County, Florida, Case No. 2008-CF-644, with one count of sexual battery with slight force, a second

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's original answer (docs. 30, 31).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

degree felony, under Florida Statues § 794.011(5) (Ex. A at 10). Following a jury trial, he was found guilty as charged (Ex. B at 216, Exs. D, E, F). On June 15, 2009, Petitioner was adjudicated guilty and sentenced to seventy-two (72) months of imprisonment, with pre-sentence jail credit, followed by eight (8) years of probation (Ex. B at 271–74, Ex. C).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-2980 (Ex. G). The First DCA affirmed the judgment per curiam without written opinion on August 13, 2010 (Ex. J). Williams v. State, 41 So. 3d 900 (Fla. 1st DCA 2010) (Table). Petitioner did not seek further review.

On November 22, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (see Ex. K, docket entry 11/22/2010). In an order rendered December 6, 2010, the state circuit court struck the motion as facially or legally insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (see Ex. O, Attachment #9). Petitioner filed an amended Rule 3.850 motion on December 30, 2010 (Ex. L). The state circuit court summarily denied it on October 14, 2011 (Ex. O). Petitioner appealed the decision to the First DCA, Case No. 1D11-6020 (see Ex. P). The First DCA affirmed the judgment per curiam without written opinion on January 19, 2012, with the mandate issuing March 20, 2012 (id.). Williams v. State, 81 So. 3d 422 (Fla. 1st DCA 2012) (Table).

Petitioner filed the instant federal habeas action on May 11, 2012 (doc. 1). Respondent does not assert a statute of limitations defense (doc. 30 at 16).[2]

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neeley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to

federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* <u>Gill</u>, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.     PETITIONER'S CLAIMS

Ground One:  "<u>Williams received inadequate Miranda warnings violating Miranda v.
Arizona.</u>"

Petitioner contends his statement to Investigator Haigh four months prior to his arrest was subject to suppression, because the <u>Miranda</u>[4] warnings given by Haigh failed to advise Petitioner of his right to counsel's presence during the interrogation and that counsel would be appointed if he could not afford counsel (doc. 45 at 5, 15–16). Petitioner states he raised this claim on direct appeal (*id.*).

---

[4] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Respondent states Petitioner presented a similar claim on direct appeal (doc. 30 at 21). Respondent contends the state court adjudicated the merits of the claim, and the court's adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 21–24).

       1.     Clearly Established Federal Law

To give force to the Constitution's protection against compelled self-incrimination, the Supreme Court established in <u>Miranda</u> certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.  *See* <u>Duckworth v. Eagan</u>, 492 U.S. 195, 201, 109 S. Ct. 2875, 106 L. Ed. 2d 166 (1989) (citing <u>Miranda</u>, 384 U.S. at 479).  Intent on "giv[ing] concrete constitutional guidelines for law enforcement agencies and courts to follow," <u>Miranda</u> prescribed the following four now-familiar warnings:

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

<u>Miranda</u>, 384 U.S. at 441–42, 479.

The four warnings required by <u>Miranda</u> are invariable, but the Supreme Court has not dictated the words in which the essential information must be conveyed.  *See* <u>Florida v. Powell</u>, 559 U.S. 50, 130 S. Ct. 1195, 1204, 175 L. Ed. 2d 1009 (2010) (citing <u>California v. Prysock</u>, 453 U.S. 355, 359, 101 S. Ct. 2806, 69 L. Ed. 2d 696 (1981) (per curiam) ("This Court has never indicated that the rigidity of <u>Miranda</u> extends to the precise formulation of the warnings given a criminal defendant." (internal quotation marks omitted)); <u>Rhode Island v. Innis</u>, 446 U.S. 291, 297, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980) (safeguards against self-incrimination include "<u>Miranda</u> warnings . . . or their equivalent").  In determining whether law enforcement officers adequately conveyed the four warnings, reviewing courts are not required to examine the words employed "as if construing a will or defining the terms of an easement.  The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by <u>Miranda</u>.'" <u>Duckworth</u>, 492 U.S. at 203 (quoting <u>Prysock</u>, 453 U.S. at 361).

The Court's decisions in <u>Prysock</u> and <u>Duckworth</u> concerned a suspect's entitlement to adequate notification of the right to appointed counsel.  In <u>Prysock</u>, an officer informed the suspect of,

*inter alia*, his right to a lawyer's presence during questioning and his right to counsel appointed at no cost. 453 U.S. at 356–57. The Fifth Circuit Court of Appeals held that the advice was inadequate to comply with <u>Miranda</u> because it lacked an express statement that the appointment of an attorney would occur prior to the impending interrogation. *See id.* at 358–59. The Supreme Court reversed. *Id.* at 362. "[N]othing in the warnings," the Court observed, "suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before [the suspect is] questioned, . . . while [he is] being questioned, and all during the questioning." *Id.* at 360–61 (internal quotation marks omitted).

Similarly, in <u>Duckworth</u> the Supreme Court upheld advice that, in relevant part, communicated the right to have an attorney present during the interrogation and the right to an appointed attorney, but also informed the suspect that the lawyer would be appointed "if and when [the suspect goes] to court." 492 U.S. at 198 (emphasis deleted; internal quotation marks omitted). "The [Seventh Circuit] Court of Appeals thought th[e] 'if and when you go to court' language suggested that only those accused who can afford an attorney have the right to have one present before answering any questions." *Id.* at 203 (some internal quotation marks omitted). The Supreme Court thought otherwise. Under the relevant state law, the Supreme Court noted, "counsel is appointed at [a] defendant's initial appearance in court." *Id.* at 204. The "if and when you go to court" advice, the Court said, "simply anticipate[d]" a question the suspect might be expected to ask after receiving <u>Miranda</u> warnings, i.e., "when [will he] obtain counsel." *Id.* Reading the "if and when" language together with the other information conveyed, the Court held that the warnings, "in their totality, satisfied <u>Miranda</u>." *Id.* at 205.

The Supreme Court reached the same conclusion in <u>Powell</u>. The Court found that the police officers in <u>Powell</u> did not "entirely omi[t]" any information <u>Miranda</u> required them to impart. 130 S. Ct. at 1205. The officers informed Powell that he had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview." *Id.* at 1204–05. The first statement communicated that Powell could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that right while the interrogation was underway. *Id.* at 1205. The Court concluded that, in

combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times.  *Id.*

2.  Federal Review of State Court Decision

Prior to Petitioner's trial, defense counsel filed a motion to suppress Petitioner's statements made to Investigator Haigh on May 28, 2008 (Ex. A at 28–29).  Counsel argued Investigator Haigh's <u>Miranda</u> warnings did not advise Petitioner of the right to the presence of counsel <u>during</u> the interrogation, rather, he advised Petitioner only that he had the right to have an attorney present <u>before</u> any questioning by law enforcement (*id.*) (emphasis in original).  Counsel additionally argued the <u>Miranda</u> warnings failed to advise Petitioner that an attorney <u>would</u> be appointed to represent him if he could not afford an attorney, and instead advised him an attorney <u>could</u> be appointed to represent him if he could not afford one (*id.*) (emphasis in original).   The trial court heard argument on the motion on May 14, 2009, the morning of trial (Ex. D at 5–6).  The court announced it had reviewed the <u>Miranda</u> warnings given to Petitioner and listened to the audio recording of Haigh's interview with Petitioner (*id.*).  The trial court denied the motion to suppress, on the ground that the warnings given by Investigator Haigh complied with <u>Miranda</u> (*id.* at 6).

Petitioner's audio recorded statement to Investigator Haigh was admitted into evidence at trial and published to the jury (Ex. D at 111–34).  At the beginning of Haigh's interview, he stated:

INVESTIGATOR HAIGH: . . . Let me make sure you understand your rights, John.  You do have the right to remain silent.  Anything that you say could be used against you in court.  You have the right to have an attorney and have that attorney present before any questioning.  If you cannot afford an attorney, one could be appointed before any questioning. And if you decide to answer questions now without an attorney, you have the right to stop—

MR. WILLIAMS:  I'll answer whatever—

INVESTIGATOR HAIGH:  — you have the right to stop at any time.  Do you understand the rights?

MR. WILLIAMS:  I ain't [sic] done nothing wrong.  (Inaudible)

INVESTIGATOR HAIGH:  I've got some questions.  And again, if I ask a question that you don't want to answer, then you don't—certainly don't have to.  Do you understand that?

MR. WILLIAMS:  I'll answer anything you ask me.

(Ex. D at 111–12).

In Petitioner's initial brief on direct appeal, he argued the trial court erred in denying the motion to suppress, because the <u>Miranda</u> warnings were insufficient, and because of this insufficiency, his statements were not knowingly, intelligently, and voluntarily given (Ex. F at 13–17).  The First DCA affirmed the judgment of conviction per curiam without written opinion (Ex. J).

With regard to the "contrary to" prong of the AEDPA standard, although the First DCA did not cite a Supreme Court case, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The First DCA's decision could have been based upon the theory that Investigator Haigh's warnings, in combination, reasonably conveyed to Petitioner his right to have an attorney present, not only at the outset of interrogation, but at all times during interrogation, and to have an attorney appointed if he could not afford to hire one.  Investigator Haigh informed Petitioner that he had "the right to have an attorney and have that attorney present before any questioning," and if Petitioner decided to answer questions "now without an attorney," Petitioner had "the right to stop at any time." Haigh also informed Petitioner if he "cannot afford an attorney, one could be appointed before any questioning."  Investigator Haigh's statements communicated to Petitioner that he could consult with a lawyer before answering any particular question, and confirmed that Petitioner could exercise that

right while the interrogation was underway. The use of the word "could" in the statement regarding appointment of counsel if Petitioner could not afford to hire one, did not suggest any limitation on the right to the presence of appointed counsel different from the clearly conveyed right to a lawyer in general, including the right to a lawyer prior to and during questioning. *See* United States v. Contreras, 667 F.2d 976, 978 (11th Cir. 1982) (where third Miranda warning was fully given, fourth warning which conditioned right to appointed counsel to future court event was sufficient). Therefore, the First DCA could have concluded Investigator Haigh's warnings were sufficient to inform Petitioner of the third and fourth Miranda warnings.

There is a possibility fairminded jurists could disagree that this theory conflicts with Prysock, Duckworth, or Powell. However, the existence of this potential for disagreement precludes this court from granting habeas relief on this claim. *See* Harrington, 131 S. Ct. at 786 ("A state court's determination that a claim lacks merit precludes habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."); Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1127 (11th Cir. 2012) (if, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of Strickland was not unreasonable and AEDPA precludes the grant of habeas relief) (citing Harrington, *supra*); Johnson v. Sec'y, Dep't of Corr., 643 F.3d 907, 910 (11th Cir. 2011) (". . . only 'if there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents' may relief be granted.") (quoting Harrington, *supra*).

   B.     Ground Two: "Counsel was ineffective for failing to properly object to restriction of cross-examination as a violation of Davis v. Alaska."

Petitioner asserts during defense counsel's cross-examination of the victim, counsel attempted to show her bias and motive to lie by questioning her about a speeding ticket she had received, and Petitioner's offer to pay her ticket but then not doing so (doc. 45 at 6, 17–20). Petitioner alleges the prosecutor objected to counsel's line of questioning on the ground that it was outside the scope of direct examination, and the trial court sustained the objection (*id.*). Petitioner contends defense counsel was ineffective for (1) failing to argue that the line of questioning was not outside the scope of direct, it was relevant to the victim's bias and motive to lie, and the court's limitation on his cross-

examination violated the Confrontation Clause, and (2) failing to assert his right to proffer the victim's testimony on this issue (*id.*).

Respondent states Petitioner raised a similar claim in his Rule 3.850 motion (doc. 30 at 26). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 26–27).

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir.

2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal. *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his amended Rule 3.850 motion (Ex. L at 8–10). As context for Petitioner's postconviction claims, the court summarized the evidence adduced at trial as follows:

> At trial, it was undisputed that the Defendant and the victim had sexual intercourse in a motor vehicle in a secluded, wooded area. The Defendant testified that the sex was consensual, but the victim testified that the sex was against her will.

> The victim testified that the Defendant basically stated to her that if they did not engage in vaginal sexual intercourse or fellatio, then he would abandon her. Attachment 5, at page 46. The victim testified that she was frightened and "I was out in the middle of nowhere and I didn't know where I was at." Id., at page 47. Eventually, the victim got into the car with the Defendant, but the victim testified that she told the Defendant that they "weren't going to be doing anything." The victim stated that the Defendant replied, "you think so?" To which she testified she replied, "I know so." Id., at pages 50–52.

> Despite clearly conveying that she did not intend to have sexual relations with the Defendant, the victim further testified that, regardless of her asking him to stop, the Defendant forced his penis into the victim's vagina while she wept. Attachment 5, at page 57. The victim testified that the Defendant threw a condom out onto the ground afterwards. Id., at page 58.

> Prior to trial, when the Defendant was questioned by police, Defendant adamantly denied having sex with the victim.[FN 1] Attachment 5, at pages 110–134. The investigator stated to the Defendant, "Don't tell me today nothing happened and . . . come back later and say that yeah, something happened but it was consensual." Id., at pages 127–128. The Defendant replied, "I ain't saying that" and that "Nothing happened between me and this girl." Id., at page 128.

> > [FN 1: The Defendant's interview with police was admitted into evidence at trial and was heard by the jury. Attachment 5, at pages 110–134.]

> The Defendant clearly stated to the investigator that "I have never had sex with that girl; never had sex with her." Id., at page 130. The investigator informed the Defendant that "I've got the condom, John" and that the investigator was going to "send that condom to the lab." Attachment 5, at 127, 131. The Defendant replied, "You do that." Id., at page 132. The Defendant consented to a D.N.A. swab. Id.

Scientific testing confirmed that the Defendant's DNA and the victim's DNA was on the condom. <u>Attachment 5</u>, at pages 201–202.

The Defendant testified at trial that his statements to the investigator that he had not had sex with the victim were a lie. <u>Attachment 5</u>, at pages 233–234. The Defendant further stated that while he did have sex with the victim, it was consensual. <u>Attachment 5</u>, at pages 223–228.

(Ex. O at 1–3).

The state court cited the <u>Strickland</u> standard as the standard applicable to Petitioner's ineffective assistance of counsel claims (Ex. O at 3–4). The state circuit court adjudicated this specific claim as follows:

The Defendant claims that his counsel was ineffective for "abandoning the Defense allowing the adversary proceeding to deteriorate which undermined the outcome of the trial." The Defendant is not entitled to relief on this claim. The essence of this ground for post-conviction relief is that the Defendant's counsel should have questioned the victim about her alleged motivation for being untruthful. The Defendant claims that the victim agreed to have sex with him in exchange for money to be used as payment towards the victim's speeding ticket. The Defendant asserts that "a complaint was filed when it became evident defendant had no intention of keeping his promise, and the sexual act was not the results [sic] of force by coercion and threat, but in actuality a 'trick gone bad. . . .'"

As the Court has noted, the Defendant testified at trial. The Defendant testified under oath as to the events of that night, but the Defendant did not make any mention about this alleged meretricious contract. <u>Attachment 5</u>, at pages 222–247. Indeed, the prosecutor asked the Defendant, "Something had to change between 4:25 that morning and 4:25, when she reported it that afternoon, to where she would report this." The Defendant answered, "I don't know. I don't know. I've only known her like five months, so I don't know what was on her mind." <u>Attachment 5</u>, at 242.

The prosecutor continued, "But you can't think of one reason why she would come up with this story and tell these people what happened." The Defendant replied, "I don't know. . . ." <u>Attachment 5</u>, at 244–245. The prosecutor asked the Defendant, "So you're saying [the victim] is going to go through this entire process because you haven't called her in a timely manner? Is that what you're saying?" The Defendant answered, "I don't know. I didn't talk to her for like two days." <u>Id.</u>, at 241.

In summary, the Defendant claims that the victim had a motivation for lying in that the Defendant broke a promise to pay her money in exchange for sex and that counsel was ineffective for not bringing this alleged "bias" before the jury. The Defendant's claim rests on the premise that Defendant himself was aware of this

purported bias.  Yet, at trial, when repeatedly asked by the prosecutor, the Defendant testified that he did not know why the victim would make up these allegations.

> It is well settled that a Defendant cannot go behind his sworn testimony in post-conviction proceedings.  <u>Ezer v. State</u>, 10 So. 3d 1176 (Fla. 4th DCA 2009).  Considering that the Defendant himself repeatedly testified that he did not know why the victim would make these allegations against him, not relying on this claim of bias at trial could hardly be considered deficient or prejudicial.

(Ex. O at 57–58).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (*see* Ex. P).

The relevant portion of defense counsel's cross-examination of the victim, A.M., is the following:

> Q [by defense counsel, Mr. Gissendanner]:  You're nineteen today?
>
> A:  Yes.
>
> Q:  Now, prior to turning nineteen, isn't it true that you received Social Security?
>
> A:  Yes.
>
> Q:  Because of your father's passing?
>
> A:  Yes.
>
> Q:  Okay.  And that runs out when you turn nineteen?
>
> MR. SANDERS [the prosecutor]:  Objection, Judge.  That's outside the scope of direct examination.
>
> THE COURT:  Sustained.
>
> MR. GISSENDANNER:  Judge, can I approach on this?
>
> THE COURT:  No.  It's outside the scope.  Obviously, you're free to call her back in your case in chief.  I'm not disallowing this testimony, but it's outside the scope.

(Ex. D at 93–94).

The record demonstrates defense counsel <u>did</u> attempt to argue his position after the trial court restricted his cross-examination of the victim. The trial court refused counsel's request to do so. Petitioner failed to show that counsel's refraining from pressing the issue further with the court was a decision that no competent counsel would have made.

Additionally, Petitioner failed to show he was prejudiced by defense counsel's failure to press the issue further by insisting on providing additional argument and proffering the victim's testimony.

During the victim's deposition, which is part of the state court record, defense counsel questioned her extensively about whether she ever needed to borrow money from Petitioner, including to pay for the speeding ticket:

> Q [by defense counsel]: There's an issue in the [police] report about a ticket, traffic ticket. What is that all about?
>
> A: I just had got a speeding ticket on my best friend's birthday, and—because he [Petitioner] was talking about him having a loud music ticket, that I just mentioned that, and he, like, told me that he offered to pay half of it. And I was getting a Social Security check every month, and I really didn't worry about it because I didn't need it. I had the money to pay for it.
>
> Q: You didn't worry about him paying you?
>
> A: Right.
>
> Q: What do you—what do you get Social Security for?
>
> A: My father passed away, so I was getting it until I turned 19.
>
> . . . .
>
> Q: Why would he offer to pay a ticket?
>
> A: I have no idea. I just know I didn't have my check at that time, and it was due two days before.
>
> Q: Two days before?
>
> A: My check was due to come in.
>
> Q: So the ticket—you needed to pay the ticket before you had the money to pay it?
>
> A: Right.

Q:  And you weren't worried about your license getting suspended?

A:  Well, I called for an extension, like, a week before it was due, and they gave it to me.

Q:  So at no time did you ever get upset with John Williams because he didn't pay your ticket?

A:  No.

. . . .

Q:  So on the way to Wal-Mart you called him [after Petitioner sent her a text message asking if she could meet him at Wal-Mart]?

A:  Yeah.

Q:  He didn't say what for?

A:  He just said to talk.  That was it.

Q:  What did you think he wanted to see you for?

A:  Nothing.  I mean, we hadn't talked for a couple of days because he, like, I thought was mad at me.

Q:  Why would he be mad at you?

A:  I don't know.  He kept saying something about I was just using him for his money, or something like that.

Q:  Why would he say that?

A:  I don't know.  Because I guess he expected me to pay—for him to pay that ticket.  And I kept telling him that I didn't want his money.

Q:  So at that point had the ticket been paid or not paid?

A:  Not.

Q:  So had you gotten your extension yet?

A:  Uh-huh.  Yes, sir.

Q:  Did you tell him that?

A:  Yeah.  I told him plenty, plenty of times that I didn't need his money for anything.

Q:  Did you ever need to borrow money from him for anything—

A:  No.

Q:  —before that?

A:  No.

(Ex. A at 53–54, 57–58).  Additionally, as previously noted, Petitioner was repeatedly questioned by the prosecutor regarding whether he was aware of any reason the victim may have fabricated the allegations against him, and Petitioner responded he did not know (Ex. E at 241–45).

In light of the victim's unequivocal testimony in her deposition that she never needed to borrow money from Petitioner, including to pay for the speeding ticket, and that she was never upset with him for not paying the ticket, as well as Petitioner's sworn testimony that he had no knowledge of a reason for the victim to fabricate her allegations, Petitioner failed to show a reasonable probability of a different result at trial if counsel had (1) insisted on providing argument on the issue of the court's limitation on his cross-examination (specifically, that line of questioning was not outside the scope of direct, it was relevant to the victim's bias and motive to lie, and the court's limitation violated the Confrontation Clause), after the trial court has already denied his request to do so, and (2) asserted his right to proffer the victim's testimony.

Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal habeas relief on this claim.

C.  <u>Ground Three:  "Counsel was ineffective for failing to object to trial court's misleading the jury to believe that any read backs of witness testimony was impermissible, request limited or partial read back of testimony, object to the trial court's response to the jury, and/or request a mistrial."</u>

Petitioner asserts defense counsel was ineffective for failing to object to, and thus preserve for appellate review, the trial court's denial of the jury's request for a copy of the victim's and Investigator Haigh's testimonies (doc. 45 at 8, 20–26).  Petitioner contends counsel should have (1)

objected to the court's response on the ground that the court failed to advise the jury that the testimony could be read to them, pursuant to Rule 3.410 of the Florida Rules of Criminal Procedure, (2) requested that the testimony be read to the jury, and (3) moved for a mistrial if the court overruled his objection or denied his request for a "read back" (*id.*). Petitioner contends the credibility of the witnesses was an extremely important issue at trial, and the result of his trial would have been different if the jury had been permitted to have the victim's and Investigator Haigh's testimonies read to them (*id.*).

Respondent states Petitioner raised a similar claim in state court (doc. 30 at 28). Respondent contends Petitioner did not allege in state court that the outcome of the trial would have been different had the jurors reviewed the testimony; rather, Petitioner premised his prejudice argument on the ground that had counsel preserved the issue, the appellate court would have ordered a new trial (*id.*). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 28–29).

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Three in his amended Rule 3.850 motion (Ex. L at 13). He asserted the trial court denied the jury's request for transcripts, because the trial testimony had not been transcribed, and the court instructed the jury to rely upon their memory of the witnesses' testimony (*id.*). Petitioner argued the trial court should have postponed deliberations and ordered the court reporter to transcribe the testimony (*id.*). With regard to prejudice, Petitioner argued

> The defendant was highly prejudiced by counsel's deficient performance by failing to object to this error, in that had the issue been preserved for appeal, there is more than a reasonable probability, as a matter of law, the DCA would have reversed defendant's conviction and ordered a new trial be granted. But except [sic] for counsel's deficient performance there is more than a reasonable probability the outcome would have been different in the defendant's trial and/or appellate review.

(Ex. L at 13).

The state circuit court adjudicated the claim as follows:

> The Defendant asserts that his counsel was ineffective for failing "to object to the Court's denial of the jury request for a copy of the testimony of the alleged victim

and Investigator Haigh, to preserve the denial for appellate review." The Defendant has not sufficiently alleged how he was prejudiced in this claim. Merely failing to preserve an issue for appellate review is not a sufficient claim of <u>Strickland</u> prejudice. "The prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not on its effect on appeal." <u>Strobridge v. State</u>, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009).

(Ex. O at 6–7). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (*see* Ex. P).

The state court did not unreasonably apply the prejudice prong of <u>Strickland</u>. Petitioner did not show a reasonable probability the result of his trial would have been different if counsel had (1) objected to the court's response to the jury's request for transcripts, on the ground that the court failed to advise the jury that the testimony could be read to them, pursuant to Rule 3.410 of the Florida Rules of Criminal Procedure, (2) requested that the testimony be read to the jury, and (3) moved for a mistrial if the court overruled his objection or denied his request for a "read back." Additionally, Petitioner's argument that counsel's alleged error prejudiced him on direct appeal is insufficient to demonstrate prejudice under <u>Strickland</u>. According to <u>Strickland</u>, when an error is claimed at the guilt stage of a trial, the focus of the prejudice inquiry is the result at trial. 466 U.S. at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."). Because Petitioner failed to show a reasonable probability the jury would have had reasonable doubt respecting his guilt had the jury been provided a transcript or "read back" of the victim's and Investigator Haigh's trial testimony, the state court's adjudication of his ineffective assistance of counsel claim was not an unreasonable application of <u>Strickland</u>.

## IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.	That the amended petition for writ of habeas corpus (doc. 45) be **DENIED**.

2.	That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 19th day of July 2013.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**


**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**